```
                   IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF KANSAS



LATRINA R. JONES,                )
                                 )
                 Plaintiff,      )
                                 )
vs.                              )    Case No. 08-1139-WEB
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of                  )
Social Security,                 )
                                 )
                 Defendant.      )
_____  )
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

1

correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On August 9, 2007, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 16-27).  Plaintiff alleges that she has been disabled since October 31, 2002 (R. at 16).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since November 15, 2004, the application date

4

(R. at 18). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis, bilateral carpal tunnel syndrome, cephalgia, major depression, and panic attacks (R. at 18). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19-20). After determining plaintiff's RFC (R. at 20), the ALJ found at step four that plaintiff is capable of performing past relevant work as a cleaner (R. at 25). In the alternative, at step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 26). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 27).

**III. Did the ALJ err in his analysis of plaintiff's mental impairments and the weight accorded to plaintiff's treating psychologist, Dr. de Wit?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.

Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

     A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating

6

physician opinion.  <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

<u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.  <u>Watkins</u>, 350 F.3d at 1301.

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004).  In the determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing, plaintiff's RFC, whether a plaintiff can do past relevant work, how age, education, and work

experience apply, and whether a plaintiff is disabled, treating source opinions are not entitled to special significance or controlling weight. <u>Soc. Sec. Rul.</u> 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2. However, even on issues reserved to the Commissioner, including the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.

As part of his step three finding that plaintiff's impairments did not meet or equal a listed impairment, the ALJ stated the following concerning the opinions of Dr. de Wit:

> The undersigned considered the opinions of Fred de Wit, Ph.D., who on May 7, 2007 indicated that the claimant's mental impairments caused marked restrictions in activities of daily living and marked difficulties in maintaining social functioning (Exhibit 22F, page 325), which would meet the listed impairments. However, Dr. de Wit noted that he did not see the claimant from July 2006 through April 2007, and his psychotherapy note, dated April 10, 2007, indicated that the claimant's situation was pretty much the same, despite the fact that she had only been taking Remeron. Furthermore, on April 10, 2007, the claimant was given a GAF of 60 (as she had been since March 8, 2006). The undersigned notes the DSM-IV, American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders indicates that GAF scores ranging from 51-60 indicate only moderate symptoms. Therefore, the claimant's mental impairments do not meet the Listings, and Dr. de Wit's opinions are not given substantial or

controlling weight.

(R. at 19-20). Later, when discussing his RFC findings for the plaintiff, the ALJ provided the following discussion of Dr. de Wit's records:

> The claimant also has mental impairments. On December 14, 2004, a Psychological Evaluation was performed by Dr. de Wit, who diagnosed her with a bipolar disorder, a panic disorder, and a post-traumatic stress disorder (PTSD). At that time, the claimant was given a global assessment of functioning (GAF) of 30 (major impairment); however, this is given little weight, as it is not supported in the record. There is no evidence of limitations to this degree and there is no evidence of any ongoing treatment history. Dr. de Wit recommended individual therapy, which the claimant attended with him. In a Psychological Evaluation performed in February and March 2005, Dr. de Wit diagnosed the claimant with major depression, recurrent, severe, without psychotic features, PTSD, an adjustment disorder with anxiety, a negativistic personality disorder, and an avoidant personality disorder (Exhibit 6F)...
>
> In a letter, dated June 21, 2005, Dr. de Wit noted that the claimant had been under his care since December 22, 2004, and he stated that the claimant suffered from major depression and panic attacks, and that her reading skills were at the 3rd grade level. Dr. de Wit opined that he considered the claimant unemployable (Exhibit 12F). On July 1, 2005, Dr. de Wit gave the claimant a GAF of 50 (Exhibit 6F), and in a Psychological Evaluation, dated September 16, 2005, he diagnosed the claimant with a dysthymic disorder and a personality disorder. She continued to see Dr. de Wit for individual counseling, and he gave her a GAF of 60 by January 20, 2006 (Exhibit 19F).

Case 6:08-cv-01139-WEB   Document 14   Filed 03/23/09   Page 10 of 17

(R. at 22).

However, the ALJ provided an incomplete and, at times, inaccurate picture of the treatment records of Dr. de Wit.  Not mentioned by the ALJ was the fact that Dr. de Wit saw plaintiff for 39 sessions from December 14, 2004 through April 10, 2007 (R. at 229-277, 406-445).  The only gap in the treatment sessions was between July 27, 2006 and April 10, 2007.  Dr. de Wit's treatment note of April 10, 2007 indicated that plaintiff was finally put back on Medicaid, and that is why she had not come in since her last session on July 27, 2006 (R. at 407).  Although the ALJ noted the gap in treatment, he failed to indicate the reason for the gap in treatment.

The ALJ stated that a GAF score of 30 assessed on December 14, 2004 was given little weight as it is not supported by the record; the ALJ further indicated that there was no evidence of limitations to this degree and there was no evidence of any ongoing treatment history.  Both findings are clearly erroneous.  Dr. de Wit first saw plaintiff on December 14, 2004 and wrote a psychological evaluation report (R. at 275-277).  Including the initial evaluation, Dr. de Wit had 39 treatment sessions with the plaintiff from December 2004 through April 2007.  The clear and undisputed evidence is that Dr. de Wit had an ongoing treatment history with the plaintiff during that time.  Furthermore, at all but one of the 39 sessions, Dr. de Wit gave a GAF score for the

plaintiff.  They can be summarized as follows:

| Date & number of sessions | GAF score |
|---|---|
| 12/14/2004-1/26/2005 (5 sessions) | 30 |
| 2/2/2006              (1 session)  | 35 |
| 2/11/2005-4/29/2005  (8 sessions)  | 40 |
| 5/6/2005             (1 session)   | 45 |
| 5/13/2005-1/2/2006   (13 sessions) | 50 |
| 1/20/2006-2/24/2006  (3 sessions)  | 55 |
| 3/8/2006-4/10/2007   (7 sessions)  | 60 |

(R. at 230-277, 406, 444).[1]  Therefore, the undisputed medical

---

[1]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. The scores in this case represent the following:

> 51-60: **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational or school functioning** (e.g., few friends, conflicts with peers or co-workers).
>
> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job).
>
> 31-40: **Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work....
>
> 21-30: **Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment** (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) **OR inability to function in almost all areas** (e.g., stays in bed all day; no job, home, or

11

record does clearly establish that plaintiff had a GAF score of 30 for 5 sessions, from December 14, 2004 through January 26, 2005.  The ALJ fails to cite to any evidence in the record that disputes the findings of Dr. de Wit.

The ALJ also noted that, on May 7, 2007, Dr de Wit prepared a report in which he opined that plaintiff had marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, and frequent deficiencies in concentration, persistence or pace resulting in a failure to complete tasks in a timely manner (R. at 501).  The ALJ noted that plaintiff had a GAF score of 60 from March 8, 2006 through April 10, 2007, and argued that this GAF score, indicating only moderate symptoms, was inconsistent with Dr. de Wit's findings of marked impairments.  The court finds numerous deficiencies in the ALJ's analysis on this point.

First, standing alone, a GAF score, which can reflect social and/or occupational functioning, does not necessarily evidence whether an impairment seriously interferes with a claimant's ability to work.  See Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).  Because a GAF score may not relate to

---

friends.

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

a claimant's ability to work, the score, standing alone, without further explanation, does not establish whether or not plaintiff's impairment severely interferes with an ability to perform basic work activities.  See Eden v. Barnhart, 109 Fed. Appx. 311, 314 (10th Cir. Sept. 15, 2004).  GAF scores are not considered absolute determinants of whether or not a claimant is disabled.  Heinritz v. Barnhart, 191 Fed. Appx. 718, 722 (10th Cir. Aug. 10, 2006).

     Second, the ALJ failed to mention that Dr. de Wit prepared a similar report with similar findings of marked limitations and frequent deficiencies of concentration, persistence or pace on October 12, 2005 (R. at 329-334).  During that time period (from May 13, 2005 through January 2, 2006) Dr. de Wit indicated that plaintiff's GAF score was 50.  Thus, although plaintiff's GAF score had improved from 50 (serious symptoms) to 60 (moderate symptoms) when Dr. de Wit had provided the two evaluations setting forth the extent of plaintiff's limitations, Dr. de Wit still believed that plaintiff had marked limitations and frequent deficiencies of concentration, persistence, or pace.

     Third, the ALJ offered an opinion that a GAF score of 60 was inconsistent with Dr. de Wit's assertion that plaintiff had marked limitations and frequent deficiencies of concentration, persistence or pace.  However, there is no medical opinion evidence that the GAF score is "inconsistent" with the opinions

13

of Dr. de Wit.  The adjudicator is not free to substitute his own medical opinion for that of a disability claimant's treating doctors.  Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004).  An ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination.  The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment.  Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).  In the absence of any medical opinion evidence indicating that a GAF score of 60 is inconsistent with the opinions of Dr. de Wit concerning the degree or extent of plaintiff's limitations, the ALJ overstepped his bounds into the province of medicine.  Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996).  See McLeland v. Astrue, 2009 WL 348290 at *8 (D. Kan. Feb. 11, 2009, Doc. 26 at 18).

     Fourth, the ALJ failed to mention or disclose many portions of the treatment records by Dr. de Wit which provide some support for his opinions regarding the degree or extent of plaintiff's limitations.  For example, Dr. de Wit had diagnosed plaintiff with post-traumatic stress disorder (R. at 257-258, 277).  When plaintiff was 3-4 years old, she and two siblings were locked naked in a closet and sexually molested on a continual basis by a lady and her son(s).  This actually led to plaintiff's mother shooting one of the perpetrators to death, for which the mother

14

went to prison.  Plaintiff was raised by her aunt, and was sexually abused by her aunt's boyfriends.  Plaintiff was raped in junior high and there was more sexual molestation when plaintiff was nine years old (R. at 275, 409).  An ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004); Chester v. Apfel, 1999 WL 360176 at *4 (10th Cir. June 4, 1999)(the ALJ may not use only portions of a report which are favorable to his decision, while ignoring other parts of the report).

    For these reasons, this case should be remanded in order for the ALJ to consider the opinions of Dr. de Wit in light of all of his treatment records and opinions.  On remand, the ALJ is reminded that if the ALJ believes that Dr. de Wit failed to provide sufficient support for his conclusions about the severity of plaintiff's mental limitations or the effect of those limitations on her ability to work, the ALJ should recontact Dr. de Wit for clarification of his opinions before rejecting them.  Robinson, 366 F.3d at 1084.  In addition, SSR 96-5p states the following:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source

>           for clarification of the reasons for the
>           opinion.

1996 WL 374183 at *6.

In light of the numerous deficiencies in the ALJ's analysis of the opinions of Dr. de Wit, this case should be remanded for further hearing. After proper consideration is given to the opinions of Dr. de Wit, the ALJ will need to make new findings in the sequential evaluation process, including new credibility[2] and RFC findings.

Because this case is being remanded, the court will address one issue not raised by the parties in order to expedite the resolution of this case. Although the ALJ rejected the opinions of Dr. de Wit regarding plaintiff's mental limitations, the ALJ did not cite to any other evidence, including medical opinions or records, in support of his mental RFC findings, or provide any explanation for why certain limitations were included, but not others.[3] To the extent there is very little medical evidence

---

[2]The court will not reach the credibility issues raised by the plaintiff because new credibility findings will be necessary after the ALJ gives proper consideration to the opinions of Dr. de Wit. See Robinson, 366 F.3d at 1085. However, on remand, the ALJ should, when evaluating plaintiff's complaints of pain, take into consideration the finding of her treating physician, Dr. Reddy, that plaintiff's pain disorder was associated with both psychological facts and her general medical condition (R. at 286).

[3]The only mental RFC limitations included in the ALJ's RFC findings for the plaintiff was: "In addition, the claimant could not perform work requiring significant interaction with the general public, but is able to remember and carry out simple

16

directly addressing plaintiff's mental RFC, an ALJ runs the risk of making unsupported findings concerning plaintiff's functional abilities.  Without evidence to support his RFC findings, the ALJ is not in a position to make an RFC determination.  See Fleetwood v. Barnhart, 211 Fed. Appx. 736, 740 (10th Cir. Jan. 4, 2007).  Therefore, on remand, the ALJ must comply with SSR 96-8p and provide a narrative discussion describing how the evidence supports his RFC findings, citing to specific medical facts and nonmedical evidence.  1996 WL 374184 at *7.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on March 23, 2009.

>                s/Donald W. Bostwick
>                DONALD W. BOSTWICK
>                United States Magistrate Judge

---

instructions consistent with unskilled work" (R. at 20).